UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERRILEE A. POSNER, | No. 2:19-cv-00507-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER** |
| HILLSTONE RESTAURANT GROUP, INC., dba BANDERA'S; and DOES 1 through 10, inclusive, | |
| Defendants. | |

This matter is before the Court on Defendant Hillstone Restaurant Group, Inc., d/b/a Bandera's ("Defendant") Motion for Summary Judgment (ECF No. 16) and Plaintiff Merrilee A. Posner's ("Plaintiff") Motion for Spoliation Sanctions (ECF No. 19).  Plaintiff filed an opposition to Defendant's motion (ECF No. 21), and Defendant filed an opposition to Plaintiff's motion (ECF No. 27).  Each party subsequently replied.  (ECF Nos. 25, 29.)  For the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment (ECF No. 16) and GRANTS Plaintiff's Motion for Spoliation Sanctions (ECF No. 19).

///

///

1

1        **I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

2            This matter arises from an alleged slip that took place on February 25, 2017, when

3    Plaintiff visited Defendant's Bandera restaurant in Sacramento.  (DSUF ¶ 1; ECF No. 16-1 at 2;

4    ECF No. 21-1 ¶ 1, Plaintiff's Responses and Objections to DSUF ("PRO").)  At Bandera,

5    Plaintiff entered the restaurant alone and was told by the greeter, Caitlyn Seely ("Seely"), there

6    was a two to three hour wait for a table.  (DSUF ¶¶ 2–3; PRO ¶¶ 2–3.)  Plaintiff made a

7    reservation with Seely then "walked down the aisle in which she later slipped to look for a seat at

8    the back of the restaurant."[2]  (DSUF ¶¶ 4–5; PRO ¶¶ 4–5.)  At that time, Plaintiff saw someone

9    was close to finishing their meal, so Plaintiff walked back up the same aisle to cancel her

10   reservation.  (DSUF ¶¶ 6–7; PRO ¶¶ 6–7.)  Plaintiff did not slip or have any trouble walking up

11   and down the aisle and did not see any water on the floor while she was walking the aisle.[3]

12   (DSUF ¶¶ 8–9; PRO ¶¶ 8–9.)  Plaintiff spent about five to ten seconds speaking with the greeter.

13   (DSUF ¶ 12; PRO ¶ 12.)  Plaintiff then walked down the aisle for a third time, past an occupied

14   booth, later identified as table 31, (PMF ¶ 7; ECF No. 25-1 ¶ 7, Defendant's Responses and

15   Objections to PMF ("DRO")), and slipped but did not fall.  (DSUF ¶ 13, PRO ¶ 13.)  Plaintiff

16   looked on the ground and saw one large puddle of water and several smaller puddles where she

17   slipped.  (PMF ¶ 6; DRO ¶ 6.)  However, Plaintiff had not seen any water on the floor from when

18   she left the greeter station until after she slipped, (DSUF ¶ 14; PRO ¶ 14), and she did not recall

19

20   [1]        The following facts are taken from Plaintiff's Material Facts ("PMF") (ECF No. 21-2) and
     Defendant's Statement of Undisputed Facts ("DSUF") (ECF No. 16-2) and are deemed
     undisputed unless otherwise noted.

21

22   [2]        Plaintiff objects to the relevancy of this fact.  (PRO ¶ 5.)  The test for relevance under
     Federal Rule of Evidence 401 is whether "the fact is of consequence in determining the

23   action."  Fed. R. Evid. 401.  The standard for relevance is a very low bar that is easily met.  *U.S.
     v. Miranda–Uriarte*, 649 F.2d 1345, 1353 (9th Cir. 1981).  Here, this fact is relevant to

24   Defendant's notice of the purported water Plaintiff slipped on.  (*See* ECF No. 16-1 at 6,
     Defendant's Motion for Summary Judgment ("MSJ")).  Notice or lack thereof is one of the key

25   elements Defendant must prove in its MSJ and thus is "of consequence."  Accordingly, the
     objection is OVERRULED.

26

27   [3]        Plaintiff objects to the relevancy of these facts.  (PRO ¶¶ 7–8.)  For the same prior
     reasons, the Court OVERRULES the objections because the statements are "of consequence."

28   Fed. R. Evid. 401.

1    seeing any waiters in the aisle walking back from the greeter station.  (DSUF ¶¶ 14–15; PRO ¶¶

2    14–15.)

3         Plaintiff guided Seely to show her the area where she slipped, and Seely saw a few drops

4    of water.  (PMF ¶ 7; DRO ¶ 7.)  Plaintiff's server notified Janine Morrison ("Morrison") of the

5    incident.  (PMF ¶ 10; DRO ¶ 10.)  Morrison was the senior services manager at Bandera.  (PMF

6    ¶2; DRO ¶ 2.)  She underwent months of training "in all aspects of restaurant operation" with

7    Defendant and has been employed as a manager of Bandera "since late 2012 or early 2013."

8    (PMF ¶ 11; DRO ¶ 11.)  Plaintiff told Morrison that "she slipped on water by table 31, she had

9    twisted her lower back, and that she was experiencing some pain."  (PMF ¶ 10; DRO ¶ 10.)

10   Morrison followed Defendant's policy by investigating the incident, including soliciting written

11   statements from Seely and Plaintiff's server.  (PMF ¶ 19; DRO ¶ 19.)

12        "Bandera trained its servers to 'circulate' the restaurant and 'constantly' refill or top off

13   glasses of water at tables from a glass container, even at tables assigned to other servers."  (PMF

14   ¶ 12; DRO ¶ 12.)  Bandera only supplies water cups to customers "if they do request water."

15   (DRO ¶ 12.)  Bandera policy required that all employees "constantly watch out for spills so they

16   can be immediately cleaned up."[4]  (PMF ¶ 17; DRO ¶ 17.)  Bandera trained its employees "to

17   clean up a spill immediately if they had a clean-up towel with them or, if not, stand by the spill

18   until another employee could be flagged down to wipe up the spill."  (PMF ¶ 18; DRO ¶ 18.)

19        Defendant maintains a video system and has a policy to save relevant videos of an

20   incident.  (DSUF ¶ 28; PRO ¶ 28.)  Bandera had several cameras throughout the restaurant that

21   continuously recorded while the restaurant was open.  (PMF ¶ 3; DRO ¶ 3.)  Defendant's policy

22   for incidents such as this was "for the manager to save video clips to 'include all information

23   around the incident' and everything that was 'important to the incident' so the home office could

24

25   [4]     Defendant objects on the grounds that Plaintiff did not submit the evidence it cites for this
26   statement in opposition to the motion. (DRO ¶ 17.)  However, Defendant filed the cited evidence
     in Defendant's MSJ. (ECF No. 16-11 at 11.)  Accordingly, the Court OVERRULES Defendant's
27   objection. *See generally Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (discussing how
     at summary judgment, courts do not focus on the admissibility of the evidence's form but its
28   contents).

1   evaluate the situation."  (PMF ¶ 21; DRO ¶ 21.)  Morrison followed Defendant's policy by

2   reviewing the video footage surrounding the incident and saving what she determined to be

3   relevant, while the remainder of the footage stayed on the "video 'feed.'"[5]  (PMF ¶ 20; DRO ¶

4   20.)  Morrison sent the video footage and written statements to Defendant's corporate office, and

5   she reported the incident on a corporate "hotline."  (PMF ¶ 23; DRO ¶ 23.)  Defendant did not

6   contact Morrison after receiving the information to ask for additional video footage.  (PMF ¶ 24;

7   DRO ¶ 24.)

8        Two to three weeks following her visit to the restaurant, Plaintiff began calling the

9   manager at Bandera to report she was experiencing pain from the slip incident and continued to

10  call several times over the next two months.  (PMF ¶ 25; DRO ¶ 25.)  On October 2, 2019,

11  Defendant responded to Plaintiff's request for all video footage during the two hours prior to the

12  slip, informing Plaintiff that the "'video system of the restaurant automatically overwrites video

13  recording after a set period of time' and since the lawsuit was not filed 'until nearly two years

14  after the alleged underlying incident,' it was 'overwritten in the ordinary course of business'"

15  well before Plaintiff filed this action.  (PMF ¶ 27; DRO ¶ 27.)

16       Plaintiff initiated this action on March 20, 2019, and filed the operative First Amended

17  Complaint ("FAC") on April 16, 2020.  (ECF No. 12.)  In her FAC, Plaintiff asserts a premise

18  liability cause of action against Defendant for negligence.  (*Id.* at 4.)  Defendant filed the instant

19  motion for summary judgment on June 21, 2021 (ECF No. 16), and Plaintiff filed the instant

20  motion for spoliation sanctions on July 7, 2021 (ECF No. 19).  The Court will first address

21  Plaintiff's motion and then turn to Defendant's motion.

22  ///

23  ///

24  ///

25

26  5     Plaintiff states Morrison reviewed "the video tape of the entire dinner service."  (PMF ¶
    20.)  Defendant objects because the purported fact is not supported by cited testimony.  (DRO ¶
27  20.)  After reviewing the cited testimony (ECF No. 21-8 at 19), the Court agrees that Morrison
    reviewed the video, but not the footage of the entire dinner service.  Accordingly, the objection is
28  SUSTAINED.

1    **II.     MOTION FOR SPOLIATION SANCTIONS**

2        A.     Standard of Law

3    Courts are vested with inherent powers "to manage their own affairs so as to achieve the

4    orderly and expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg.*

5    *Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43

6    (1991)).  The Ninth Circuit has recognized trial courts possess "inherent discretionary power to

7    make appropriate evidentiary rulings in response to the destruction or spoliation of relevant

8    evidence," and that sanctions for spoliation of evidence may be imposed under the court's

9    inherent powers to manage its own affairs.  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.

10   1993); *Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*, No. CV 11–5639 EMC (JSC), 2014 WL

11   595912, at *4 (N.D. Cal. Feb. 14, 2014) (citations omitted); *see also Leon v. IDX Sys. Corp.*, 464

12   F.3d 951, 958 (9th Cir. 2006)).

13   Spoliation is the destruction or significant alteration of evidence, or the failure to preserve

14   property for another's use as evidence in pending or reasonably foreseeable litigation.  *See U.S. v.*

15   *Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *Kearney v. Foley & Lardner, LLP*,

16   590 F.3d 638, 649 (9th Cir. 2009) (citations omitted).  A defendant engages in spoliation if it had

17   "some notice that the documents were potentially relevant" to the litigation before they were

18   destroyed.  *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991).

19       B.     Analysis

20   Plaintiff moves for spoliation sanctions against Defendant on the basis that Defendant

21   failed to preserve all relevant video evidence.  (ECF No. 19-1 at 10.)  Plaintiff seeks sanctions

22   against Defendant in the form of two adverse inference jury instructions.  (*Id.*)  Plaintiff contends

23   sanctions are appropriate because Defendant destroyed video evidence that would have shown

24   how and when the purported water accumulated on the floor.  (*Id.*)  Defendant opposes, arguing

25   sanctions are not warranted, as Defendant preserved all relevant evidence.[6]  (ECF No. 27 at 5.)

26

27   ─────────────
     [6]     Defendant further argues Plaintiff's motion is untimely, as discovery disputes were
     required to be resolved seven months prior to Plaintiff filling the motion.  (ECF No. 27 at 19.)
28   However, Plaintiff's motion seeks the Court exercise its inherent discretionary power to impose

1        While the Ninth Circuit has not set forth the standard for when an adverse inference

2   instruction is appropriate, California district courts, including this district, have adopted the

3   Second Circuit's three-part test, which provides: "a party seeking an adverse inference instruction

4   based on the destruction of evidence must establish[:] (1) that the party having control over the

5   evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were

6   destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's

7   claim or defense such that a reasonable trier of fact could find that it would support that claim or

8   defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)

9   (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–12 (2d Cir. 2001)); *see, e.g.*, *Olney v.*

10  *Job.com*, No. 1:12-CV-01724-LJO, 2014 WL 5430350, at \*10 (E.D. Cal. Oct. 24, 2014); *Waters*

11  *v. Kohl's Dep't Stores, Inc.*, No. 14-CV-00043-KAW, 2015 WL 1519657, at \*2 (N.D. Cal. Apr.

12  2, 2015).  The Court will address each element in turn.

13                              i.        *Duty to Preserve Evidence*

14       Plaintiff states Defendant should have known the incident was reasonably likely to result

15  in litigation and thus had a duty to preserve evidence.  (ECF No. 19-1 at 8–9.)  Defendant

16  opposes, arguing it had no duty to preserve the overwritten video on the bases that: (1) Defendant

17  had already preserved all relevant video footage; and (2) Plaintiff did not contemplate litigation

18  until March 2018, a year after the incident.  (ECF No. 27 at 15.)  At issue is whether Defendant

19  had sufficient notice of the claim, or potential claim, such that its duty to preserve the video

20  footage was triggered.

21       Litigants have an obligation to preserve relevant evidence "from the moment that

22  litigation is reasonably anticipated." *Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d

23  1132, 1136 (N.D. Cal. 2012).  "The phrase 'reasonably foreseeable' as it relates to a party's

24  preservation duties sets an objective standard." *Id.* at 1145 (citing *Micron Tech., Inc. v. Rambus*

25  *Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).  A defendant engages in spoliation of evidence if it

26  had "some notice that the documents were potentially relevant" to the litigation before they were

27  _____

28  sanctions and is not a sanction pursuant to Rule 37.  (ECF No. 29 at 5); *see Glover*, 6 F.3d at
    1329.  Accordingly, Plaintiff's motion is not untimely, and the Court will consider it.

                                        6

1    destroyed.  *Akiona*, 938 F.2d at 161; *Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265

2    F.R.D. 510, 533 (E.D. Cal. 2010) (citations omitted); *see also U.S. v. Maxxam, Inc.*, No. C-06-

3    07497 CW (JCS), 2009 WL 817264, at *7 (N.D. Cal. 2009) (citing *Wm. Thomas Co. v. Gen.*

4    *Nutrition Corp ., Inc.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)); *Graham v. Teledyne–Cont'l*

5    *Motors*, 805 F.2d 1386, 1390 n.9 (9th Cir. 1987) (citing with approval *Bowmar Instrument Corp.*

6    *v. Texas Instruments, Inc.*, 25 Fed. R. Serv. 423, 427 (N.D. Ind. 1977)).  Further, "when a

7    company or organization has a document retention policy, it is obligated to suspend that policy

8    and implement a litigation hold to ensure the preservation of relevant documents after the

9    preservation duty has been triggered."  *Apple*, 881 F. Supp. 2d at 1137 (citation and internal

10   quotation marks omitted).

11        Here, Defendant had a duty to preserve the overwritten video footage.  Even though

12   Defendant investigated the incident, which included reviewing the video footage, its unilateral

13   determination that the overwritten video footage was not relevant is insufficient to overcome its

14   duty to preserve relevant evidence.  *See Waters*, 2015 WL 1519657 at *4 (reasoning that the

15   employee "decided to retain only nine minutes of video footage, which definitively proved that

16   [the hazard] did not cause Plaintiff's fall, does not mean that there was no other potentially

17   relevant footage.").  Indeed, Defendant's failure to retain the additional footage requires the Court

18   to take Defendant's word that such footage did not capture any evidence relevant to Plaintiff's

19   claims, such as the condition of the area from which she slipped.  Based on the remaining video

20   footage showing Plaintiff's slip and Plaintiff's multiple complaints of injury (PMF ¶ 25; DRO ¶

21   25), Defendant should have anticipated the possibility of litigation.  *See Waters*, 2015 WL

22   1519657 at *3 (finding the defendant was on notice of the potential of litigation and thus had a

23   duty to preserve evidence when the preserved video footage showed the plaintiff's injury).

24   Further, given Defendant's response to the incident, including investigating the incident,

25   preparing a report, obtaining statements from its employees, saving some video footage, and

26   sending such documentation to its corporate office (which subsequently sent it to Defendant's risk

27   management firm), Defendant was, at a minimum, on notice of the potential of litigation.  (ECF

28   No. 27 at 5; DRO ¶¶ 19–21, 23, 25); *see Aiello v. Kroger Co.*, No. 2:08-CV-01729-HDM, 2010

7

1    WL 3522259, at *3 (D. Nev. Sept. 1, 2010) (finding the defendant had notice of potential

2    litigation when: (1) the defendant filled out an accident report (which the court found sufficient in

3    itself); and (2) the defendant's manager "extracted, reviewed, and sent the surveillance video to

4    the Risk Management Department at [the defendant's] corporate headquarters").  Therefore,

5    Defendant had a duty to preserve all potentially relevant evidence.

6                            *ii.     Culpable State of Mind*

7         Plaintiff contends Defendant knew on the night of the incident that the video footage prior

8    to the incident was "critical evidence."  (ECF No. 19-1 at 9.)  Defendant opposes, arguing it did

9    not act with the requisite culpable state of mind because it performed an investigation and saved

10   the relevant video footage.  (ECF No. 27 at 14–15.)

11        In determining the requisite state of mind, "bad faith is not the required mental state[,] . . .

12   [a]ll that the court must find is that [the spoliator] acted with a 'conscious disregard' of its

13   obligations."  *Apple*, 881 F. Supp. 2d at 1147 (citing *Hamilton*, 2005 WL 3481423 at *7); *see*

14   *also Io Grp. Inc. v. GLBT Ltd.*, No. C-10-1282 MMC (DMR), 2011 WL 4974337, at *5 (N.D.

15   Cal. Oct. 19, 2011); *Unigard*, 982 F.2d at 368 n.2 (finding while bad faith may be sufficient for

16   sanctions, it is not necessary).  "A party's destruction of evidence qualifies as willful spoliation if

17   the party has 'some notice that the documents were potentially relevant to the litigation before

18   they were destroyed.'"  *Leon*, 464 F.3d at 959 (quoting *Kitsap*, 314 F.3d at 1001).

19        In the instant matter, whether Defendant destroyed the potentially relevant evidence

20   intentionally or unintentionally is of no consequence, as Plaintiff may obtain an adverse inference

21   instruction in the absence of bad faith.  *Unigard*, 982 F.2d at 368 n.2; *see also Glover*, 6 F.3d at

22   1329.  Defendant reviewed the video footage and knew it would be destroyed within ninety days,

23   per its video retention capability, (ECF No. 27 at 7–8), and thus was on notice of the potential

24   relevancy of the footage and consciously disregarded its duty to preserve the evidence.  *See*

25   *Hamilton*, 2005 WL 3481423 at *5 (quoting *Residential Funding Corp.,* 306 F.3d at 108) (a

26   culpable state of mind exists when the defendant destroyed evidence "knowingly, even if without

27   intent to [breach a duty to preserve it], or negligently") (alterations in original); *Leon*, 464 F.3d at

28   959; *Aiello*, 2010 WL 3522259 at *3.  Indeed, Defendant's employee consciously selected two

1    short video clips for preservation while excluding all other footage.  *See Waters*, 2015 WL

2    1519657 at *3 (finding the defendant possessed the requisite state of mind when it failed to

3    preserve additional footage before and after the plaintiff's fall, despite defendant's contention that

4    the missing footage was not relevant as it did not capture the incident).  Further, when

5    Defendant's corporate headquarters received the preserved video footage, it too made a conscious

6    decision not to request additional video, with full knowledge that the system would override any

7    additionally footage absent such a request.  *See Apple*, 881 F. Supp. 2d at 1137 (finding when a

8    company has a document retention policy, it has a duty to suspend that policy to preserve relevant

9    evidence).  Therefore, by consciously disregarding its duty to preserve all potentially relevant

10   evidence, Defendant acted with the requisite culpable state of mind.

*iii.    Whether the Evidence was Relevant*

12       Plaintiff argues the overwritten video footage is "critical evidence."  (ECF No. 19-1 at 9.)

13   Defendant opposes, arguing the video footage is not relevant because Defendant's investigation

14   found no water on the floor and the preserved video does not show any water on the floor.  (ECF

15   No. 27 at 12.)

16       For discovery purposes, relevance means only that the materials sought are reasonably

17   calculated to lead to the discovery of admissible evidence.  *See Oppenheimer Fund, Inc. v.*

18   *Sanders*, 437 U.S. 340, 351 (1978).  "[R]elevancy is a very broad standard and is not limited to

19   causation."  *Waters*, 2015 WL 1519657 at *4.  Additionally, a future litigant need not request for

20   a defendant to preserve evidence if the defendant knows or should know of impending litigation.

21   *Apple*, 881 F. Supp. 2d at 1136–37.

22       Here, as relevancy is a broad standard, even if the missing footage did not show Plaintiff's

23   slip, it is relevant (or at a minimum, potentially relevant) to show the condition of the premises

24   prior to the slip, how and when the purported hazard came to exist, and the employee's

25   knowledge of such hazard.  *See Leon*, 464 F.3d at 959 (finding relevancy if the party has some

26   notice that the documents were *potentially* relevant to the litigation prior to their destruction)

27   (emphasis added); *Kitsap*, 314 F.3d at 1001 (same).  As above, Defendant's unilateral

28   determination that the overwritten video footage was not relevant is insufficient, as it requires the

9

1    Court to take Defendant's word that such footage did not capture any evidence relevant to

2    Plaintiff's claims. *See Waters*, 2015 WL 1519657 at *4.  Further, because Defendant reviewed

3    the video footage, it reasonably knew the video footage could be potentially relevant evidence.

4    *See Carl Zeiss Vision Intern. GmbH v. Signet Armorlite, Inc.*, No. 07–CV–0894 DMS (POR),

5    2010 WL 743792, at *14 (S.D. Cal. Mar. 1, 2010) (where a party should reasonably know that

6    evidence is potentially relevant to anticipated litigation, that party is under the obligation to

7    preserve that evidence); *Rev 973 LLC v. Mouren–Laurens*, No. CV 98–10690 AHM (Ex), 2009

8    WL 273205, at *1 (C.D. Cal. Feb. 2, 2009) (same); *In re Napster, Inc. Copyright Litig.*, 462 F.

9    Supp. 2d 1060, 1067–68 (N.D. Cal. 2006) (same).  Indeed, the missing footage could have shown

10   the condition of the premises prior to the slip and determined whether Defendant was on notice of

11   the purported water spill.  *Waters*, 2015 WL 1519657 at *4 (finding relevancy when the

12   defendant failed to preserve relevant video footage from before and after the plaintiff's fall, as it

13   would have showed the condition of the premises prior to the fall).  Therefore, the overwritten

14   video footage was, at a minimum, potentially relevant to Plaintiff's claims.

15        In sum, as each element is met, sanctions are warranted.

16                          *iv.     Appropriate Sanctions*

17        Plaintiff seeks sanctions in the form of two adverse inference jury instructions: (1) a

18   rebuttable presumption that Defendant's employees caused the water to be on the floor; and (2) a

19   rebuttable presumption that Defendant had sufficient notice of such water.  (ECF No 19-1 at 10.)

20   At issue is whether Plaintiff's requested remedy is commensurate with Defendant's conduct.

21        A court's discretion in choosing the type of sanction is broad and can include awarding

22   attorneys' fees, dismissing the claims, or instructing the jury that it may draw an adverse

23   inference.  *Apple*, 881 F. Supp. 2d at 1135.  However, a court's discretion is not without limits.

24   *Id.* at 1136.  Courts must weigh several factors in deciding the appropriate sanction to impose.  *Id.*

25   A remedy "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk

26   of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the

27   prejudiced party to the same position he would have been absent the wrongful destruction of

28   evidence by the opposing party."  *Id.* (citations and internal quotation marks omitted); *see*

10

1    *also Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1008 (D. Ariz. 2011).  Sanctions

2    must be exercised with restraint and "should be appropriate to the conduct that triggered the

3    sanction."  *Apple*, 881 F. Supp. 2d at 1136 (citing *Chambers*, 501 U.S. at 44–45).

4         By the nature of spoliation, it is not possible for the Court to know what the destroyed

5    evidence would have shown.  *Id.* at 1150.  Accordingly, courts may instruct the jury that they can

6    infer a certain fact from the absence of specific evidence.  *See Glover*, 6 F.3d at 1329; *see also*

7    *Akiona*, 938 F.2d at 161 ("Generally, a trier of fact may draw an adverse inference from the

8    destruction of evidence relevant to a case.").  Adverse inference instructions range in severity

9    based on the spoliator's level of conduct.  *See Chambers*, 501 U.S. at 44–45 (finding the court's

10   choice of sanction should be commensurate to the spoliator's conduct).

11        In the instant matter, Plaintiff's requested remedy is severe.  *See Waters*, 2015 WL

12   1519657 at *5 (holding the requested jury instruction was too severe when it stated: "[the

13   defendant] was aware of and had possession of additional video footage depicting [the plaintiff's]

14   fall and the surrounding area.  Despite an obligation to preserve that video, [the defendant]

15   destroyed it.  As a result of this conduct, you may infer that the contents of this video footage

16   would have been harmful to [the defendant].");  *see also Apple*, 881 F. Supp. 2d at 1150 (quoting

17   *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470

18   (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*,

19   685 F.3d 135 (2d Cir. 2012) ("The degree of harshness should be dictated by the 'nature of the

20   spoliating party's conduct — the more egregious the conduct, the more harsh the sanction.'").

21   Indeed, Plaintiff's requested jury instructions would all but guarantee her success in the matter.

22   The Court does note, however, that Plaintiff suffered some prejudice by Defendant's spoliation of

23   the evidence.  *See Waters*, 2015 WL 1519657 at *5 ("[T]he additional video footage would have

24   provided evidence not otherwise made available, including the condition of the premises for

25   liability purposes–specifically that [the defendant] failed to exercise ordinary care in maintaining

26   the premises.").  Though the Court cannot speculate as to the contents of the destroyed evidence,

27   it is plausible that it could have shown whether Defendant had notice of the water and whether

28   Defendant caused the water to be on the floor.  *Id.*  Absent such evidence, Plaintiff is

11

1   prejudiced.  *See Leon,* 464 F.3d at 959 (prejudice hinges on whether spoliation impaired the other

2   party's "ability to go to trial or threatened to interfere with the rightful decision of the case").

3   However, despite Plaintiff's prejudice, Defendant did not act in bad faith.  Indeed, Defendant

4   made an earnest attempt to preserve the evidence it determined to be relevant.  (ECF No. 27 at

5   14–15.)

6          Therefore, weighing the prejudice Plaintiff suffered against Defendant's conscious

7   disregard to preserve all potentially relevant evidence (albeit in the absence of bad faith), the

8   Court has determined the appropriate language for an adverse inference jury instruction is as

9   follows:

> As a matter of law, Hillstone failed to prevent the destruction of
> potentially relevant evidence for Ms. Posner's use in this case. This
> is known as the "spoliation of evidence."
>
> Evidence is relevant if it would have clarified a fact at issue in the
> trial and otherwise would have been introduced into evidence.  In this
> case, the lost evidence may have been favorable to Ms. Posner.
>
> Whether this finding is important to you in reaching a verdict in this
> case is for you to decide.  You may choose to find it determinative,
> somewhat determinative, or not at all determinative in reaching your
> verdict.

18  *See Apple*, 881 F. Supp. 2d at 1151; *Jackson Fam. Wines*, 2014 WL 595912 at *8; *see also*

19  *Johnson v. Wells Fargo Home Mortgage, Inc.*, 635 F.3d 401, 422 (9th Cir. 2011) (finding no

20  abuse of discretion and affirming the adverse inference jury instruction when the instruction was

21  "flexible").

22         **III.    MOTION FOR SUMMARY JUDGMENT**

23                 A.     Standard of Law

24         Summary judgment is appropriate when the moving party demonstrates no genuine issue

25  of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

26  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

27  judgment practice, the moving party always bears the initial responsibility of informing the

28  district court of the basis of its motion, and identifying those portions of "the pleadings,

12

1    depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

2    which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

3    *Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof

4    at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

5    solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at

6    324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a

7    party who does not make a showing sufficient to establish the existence of an element essential to

8    that party's case, and on which that party will bear the burden of proof at trial.

9         If the moving party meets its initial responsibility, the burden then shifts to the opposing

10   party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*

11   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

12   *Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute,

13   the opposing party may not rely upon the denials of its pleadings, but is required to tender

14   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

15   support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must

16   demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

17   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

18   the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

19   the nonmoving party. *Id*. at 251–52.

20        In the endeavor to establish the existence of a factual dispute, the opposing party need not

21   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

22   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

23   trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is

24   to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

25   trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's

26   note on 1963 amendments).

27        In resolving the summary judgment motion, the court examines the pleadings, depositions,

28   answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.

1    R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

2    of the opposing party is to be believed and all reasonable inferences that may be drawn from the

3    facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

4    at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

5    obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

6    *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

7    1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

8    "must do more than simply show that there is some metaphysical doubt as to the material facts."

9    *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

10   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at

11   587.

12              B.      Analysis

13         In moving for summary judgment, Defendant argues it did not have notice of the

14   purported water on which Plaintiff slipped.  (ECF No. 16-1 at 4.)  In opposition, Plaintiff

15   contends Defendant created the dangerous condition, and therefore, knowledge of the hazardous

16   condition is imputed to Defendant.  (ECF No. 21 at 7.)

17         "It is well established that, in California, while a store owner is not 'an insurer of the

18   safety of its patrons,' she 'owe[s] them a duty to exercise reasonable care in keeping the premises

19   reasonably safe.'"[7]  *Contreras v. Wal-Mart Stores, Inc.*, No. SACV 14-097-3DOC (ANx), 2015

20   WL 12656938, at *3 (C.D. Cal. May 8, 2015) (quoting *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200,

21   1205 (2001)) (alteration in original).  "To prevail on a negligence claim, a plaintiff must prove

22   'duty, breach, causation[,] and damages.'"  *Id.*  "California slip and fall plaintiffs must prove the

23   store owner had actual or constructive notice of a dangerous condition prior to the plaintiff's

24   injury to establish causation."  *Bean v. Costco Wholesale Corp.*, No. 2:19-cv-00647-TLN-KJN,

25   2021 WL 4263324, at *4 (E.D. Cal. Sept. 20, 2021) (citations omitted); *see also Ortega*, 26 Cal.

26   4th at 1206.  However, in instances where the owner or employee creates the dangerous condition,

27

28   ---
     [7]      In diversity actions, federal courts use the applicable state substantive law.  *Snead v.*
     *Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001).

                                               14

1    "the invitee need not prove the owner's notice or knowledge of the dangerous condition; the

2    knowledge is imputed to the owner." *Sanders v. MacFarlane's Candies*, 119 Cal. App. 2d 497,

3    501 (1953).

4                                    *i.      Constructive Notice*

5           Defendant contends Plaintiff cannot produce admissible evidence showing there is a

6    triable issue that "the purported spill existed long enough for Defendant to clean it up."  (ECF No.

7    16-1 at 6.)  Defendant further argues it shifted the burden to Plaintiff to show a triable issue of

8    fact because Defendant produced admissible evidence showing: (1) its employees constantly

9    check its floors for spills; (2) once an employee spots a spill, they clean it up immediately; and (3)

10   Plaintiff walked up and down the aisle without seeing water or having difficulty before she

11   slipped.  (*Id.*)  In opposition, Plaintiff argues Defendant's employees must have spilled water and

12   caused the hazard because "[s]ervers would have been refilling waters at these tables and

13   circulating the restaurant through the main walkway adjacent to table 31 on their way to serve

14   water at other tables."  (ECF No. 21 at 7.)  Plaintiff further argues, since there is no other

15   identifiable source for the water on the floor, "the circumstantial evidence supports the inference

16   that the water [on which Plaintiff] slipped was spilled on the floor during the course of water

17   service by [Defendant's] employees."  (*Id.*)  In reply, Defendant argues it would be improper for

18   the Court to infer the Defendant's employees caused the water on the floor because it is

19   unsupported by evidence and assumes: "1) the customers drank sufficient water to need a refill; 2)

20   they received a refill; 3) employee spilled enough water to cause one large and several small

21   puddle[s] in the middle of the floor; and 4) that employee[s] did not immediately clean up the

22   spill."  (ECF No. 25 at 7.)

23          A plaintiff can show a defendant had constructive notice of a hazardous condition through

24   circumstantial evidence — that is, "nothing more than one or more inferences which may be said

25   to arise reasonably from a series of proven facts."  *Ortega*, 26 Cal. 4th at 1206–07

26   (quoting *Hatfield v. Levy Brothers*, 18 Cal. 2d 798, 805 (1941)).  In other words, the plaintiff need

27   not provide direct evidence of how long the defective condition existed.  *Louie v. Hagstrom's*

28   *Food Stores*, 81 Cal. App. 2d 601, 607 (1947).  "Whether a dangerous condition has existed long

                                                15

1   enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and

2   the cases do not impose exact time limitations.  Each accident must be viewed in light of its own

3   unique circumstances."  *Ortega*, 26 Cal. 4th at 1207; *see also Sapp v. W.T. Grant Co.*, 172 Cal.

4   App. 2d 89, 94 (1959).  However, "a defendant is entitled to judgment as a matter of law if the

5   plaintiff fails to show that the dangerous condition existed for at least a sufficient time to be

6   discovered by ordinary care and inspection."  *Ortega*, 26 Cal.4th at 1207.  A defendant can prove

7   this element by showing it exercised ordinary care "by making reasonable inspections of the

8   portions of the premises open to customers, and the care required is commensurate with the risks

9   involved."  *Id.* at 1205.

10          Defendant cites *Peralta*, in which the court found, as a matter of law, the defendant

11  satisfied its duty to inspect the premises by inspecting the area where plaintiff slipped eight

12  minutes before she slipped.  *Peralta v. Vons*, 24 Cal. App. 5th 1030, 1037 (2018).  Defendant

13  argues the facts of the instant case are stronger than the facts present in *Peralta*, because its policy

14  is for employees to regularly monitor for spills and clean them up immediately.  (ECF No. 16-1 at

15  5.)  Defendant further argues the five to ten second window created by Plaintiff walking up and

16  down the aisle to speak with the greeter, "comports with the standard of care asserted by

17  Plaintiff's expert, who opined that the water should be cleaned up within five minutes."  (ECF

18  No. 16-1 at 6.)  However, the Court is mindful "there are no time limitations with regard to

19  constructive notice, and each case must be viewed in light of its own facts and circumstance[s]."

20  *Contreras*, 2015 WL 12656938, at *7 (reasoning it is inappropriate to grant summary judgment

21  on the issue of constructive notice in a slip and fall case even though defendant inspected the

22  exact spot plaintiff fell thirteen minutes prior because plaintiff was "entitled to have a jury hear

23  all of the facts and circumstances surrounding the fall").

24          Additionally, the Court refutes Defendant's argument that Plaintiff cannot produce

25  admissible evidence showing there is a triable issue that "the purported spill existed long enough

26  for Defendant to clean it up."  (ECF No. 16-1 at 6).  Here, the best evidence Plaintiff had

27  available would have been the video evidence showing the events prior to Plaintiff's slip.

28  However, due to Defendant's actions or inactions, this evidence is no longer available to Plaintiff.

16

1     *See generally supra* Part II.B (reasoning the footage could have shown the condition of the

2     premises prior to the slip and determined whether Defendant was on notice of the purported spill);

3     *see also Spizzirri v. Target Corp.*, No. 14CV2006 JAH (WVG), 2016 WL 11765614, at *4 (S.D.

4     Cal. Mar. 31, 2016) (holding a genuine issue of material fact still existed in part because

5     defendant failed to preserve direct or circumstantial evidence of constructive notice that was

6     present when the slip occurred.)

7          Instead, both parties have submitted significant circumstantial evidence from which a jury

8     may infer Defendant had constructive notice of the puddle on which Plaintiff allegedly slipped, or

9     that Defendant's employees caused the spill.  *See Bean*, 2021 WL 4263324 at *6; *see also Pineda*

10    *v. Target Corp.*, No. SACV 08-0315 AG RNBX, 2009 WL 3244995, at *4 (C.D. Cal. Oct. 5,

11    2009) (holding it was inappropriate to grant summary judgment because the jury could make

12    inferences from the parties' submitted evidence that defendant's inspection policies were

13    unreasonable).  According to Morrison's deposition, Defendant's policy is for its servers to

14    constantly circulate the tables and constantly refill water glasses for those patrons who requested

15    water.  (PMF ¶ 12; DRO ¶ 12.)  Defendant's employees are also supposed to constantly monitor

16    for spills, and if an employee spots a spill, they are supposed to immediately clean it up or stand

17    guard until another employee can help clean the spill.  (PMF ¶¶ 17–18; DRO ¶¶ 17–18.)  There is

18    no evidence before the Court that shows the last time an employee walked through the area where

19    Plaintiff slipped and monitored for spills.  The available surveillance video does show the area

20    where Plaintiff slipped was highly trafficked by patrons and servers, and the video also shows the

21    greeter, Seeley, using a rag to wipe up the area where Plaintiff slipped.  (ECF No. 21-10.)

22         Here, drawing reasonable inferences in Plaintiff's favor, the foregoing evidence (and lack

23    thereof) leads to the following questions for the jury: (1) is Defendant's policy of requiring its

24    employees to constantly monitor for spills commensurate with the exercise of ordinary care by

25    Defendant; (2) did Defendant's employees cause the spill when adhering to Defendant's policy

26    and circulating nearby tables to refill water cups; and (3) was the spilled water on the floor long

27    enough for a reasonably prudent person to notice its existence?  *See Bean*, 2021 WL 4263324 at

28    *6; *see also Sapp*, 172 Cal. App. 2d at 94.  As to notice, the jury must decide, taking into account

1    all circumstances, whether a restaurant owner exercising ordinary care should have been on

2    notice of a slip and fall hazard in a heavily trafficked area of the restaurant that patrons and

3    employees frequently pass through.[8]  *See Bean*, 2021 WL 4263324 at \*6 (quoting *Ortega*, 26 Cal.

4    4th at 1205) ("[T]he care required is commensurate with the risks involved.").

5         As *Ortega* repeatedly makes clear, these are questions to be answered by the jury, which

6    may draw differing inferences from the evidence.  *See Ortega*, 26 Cal. 4th at 1205, 1207–1209

7    (quoting *Sapp*, 172 Cal. App. 2d at 94; *Bridgman v. Safeway Stores, Inc.*, 53 Cal. 2d 443, 447

8    (1960) ("[I]t is ordinarily a question of fact for the jury whether, under all the circumstances, the

9    defective condition existed long enough so that it would have been discovered by an owner who

10   exercised reasonable care.").  Plaintiff is entitled to have a jury hear all the facts and

11   circumstances surrounding the slip, including the size of the alleged puddles, Defendant's policy

12   for employees to circulate the restaurant with water pitchers, Defendant's policies for monitoring

13   and cleaning spills, and the video surveillance of the slip, to draw its own conclusion regarding

14   whether a reasonably prudent person would have discovered the hazardous condition.  *See*

15   *Contreras*, 2015 WL 12656938 at \*7.  Therefore, a genuine dispute exists as to whether

16   Defendant had constructive notice of the dangerous condition on which Plaintiff allegedly

17   slipped.  Accordingly, a genuine dispute of material fact precludes the Court from granting

18   summary judgment.  Defendant's motion for summary judgment (ECF No. 16) is thus DENIED.

19        **IV.    CONCLUSION**

20        For the foregoing reasons, the Court hereby GRANTS Plaintiff's Motion for Spoliation

21   Sanctions (ECF No. 19) and DENIES Defendant's Motion for Summary Judgment (ECF No. 16).

22   The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic

23   filing date of this Order indicating their readiness to proceed to trial and proposing trial dates.

24   //

25   //

26   //

27   _____

28   [8]     The Court has reviewed the video evidence and determined the aisle where Plaintiff slipped has heavy foot traffic by restaurant patrons and Defendant's employees.

1    IT IS SO ORDERED.

2  DATED:  March 8, 2022

3

4

5    _____
     Troy L. Nunley
6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28